UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| OWEN COLLIER, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 13-1790 (RMC) |
| DISTRICT OF COLUMBIA, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

# OPINION

Plaintiffs Anthony Smart and Owen Collier, Jr. worked as security guards at Stadium Nightclub. Last June, they were involved in a middle-of-the-night fracas when tasked with escorting unruly customers out of the nightclub. When they reached the club's parking lot, the customers began fighting with the security officers. Officers with the District of Columbia Metropolitan Police Department (MPD), who happened to be nearby, came running to break up the fight. Plaintiffs allege that they were injured: one of the Stadium Nightclub guests, LaQuan Williams, punched Mr. Smart in the jaw, and MPD Officer Marques McRae struck Mr. Collier in the eye with a baton. Plaintiffs sued Mr. Williams, Officer McRae, and the District of Columbia; Mr. Williams and the District of Columbia have moved to dismiss. As explained below, Defendants' motions will be granted in part and denied in part.

## I. FACTS

In the early morning hours of June 23, 2013, Messrs. Collier and Smart were working security at Stadium Nightclub, located at 2127 Queens Chapel Rd., N.E., Washington, D.C. At around 2:30 a.m. in the early morning of June 23, LaQuan Williams and his entourage

1

of around thirty people were smoking marijuana and other illegal substances inside the club.[1] Second Am. Compl. [Dkt. 23] ¶ 9. As a result, club management asked them to leave. *Id*. Messrs. Collier and Smart escorted the group outside to the parking lot. Once outside, Mr. Williams allegedly socked Mr. Smart in the jaw and battered other parts of his body. *Id*. ¶¶ 9, 38. Mr. Smart asserts that he suffered serious injury including "multiple bruises and contusions over many parts of his body." *Id*. ¶ 39.

Mr. Smart's fellow security officers attempted to help him. But then, members of Mr. Williams' entourage responded by attacking the security officers. *Id*. ¶ 9. MPD officers observed what was happening and rushed to the scene wielding their batons. *Id*. Officer McRae allegedly hit Mr. Collier in the eye with his baton, causing eye and traumatic brain injuries. *Id*. ¶¶ 9, 23-24.

Messrs. Smart and Collier filed suit in D.C. Superior Court. The case was removed here. *See* Notice of Removal [Dkt. 1]. The complaint has been amended twice, and the current operative version is the Second Amended Complaint, which sets forth seven counts. Mr. Collier asserts Counts I through VI, and Mr. Smart asserts Count VII, as follows:

> Count I—Negligence (against the District of Columbia);
>
> Count II—Assault and Battery (against the District of Columbia);
>
> Count III—Assault and Battery (against Officer McRae);
>
> Count IV—Violation of the Fourth and Fifth Amendment pursuant to 42 U.S.C. § 1983 (against Officer McRae);[2]

---

[1] At the time of the incident, Mr. Williams was a wide receiver for the Baltimore Ravens.

[2] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

Count V— Violation of the Fourth and Fifth Amendment pursuant to 42 U.S.C. § 1983 (against the District of Columbia);

Count VI—Assault and Battery (Mr. Collier against Mr. Williams); and

Count VII—Assault and Battery (Mr. Smart against Mr. Williams).

Second Am. Compl. ¶¶ 14-39.

In support of the claims against the District of Columbia, Mr. Collier asserts that the District had a custom of failing to require officers to file "use-of-force incident reports," known as PD 914(e) forms, citing the case of a man named Troy Richardson as an example. *Id*. ¶ 11. Mr. Richardson suffered injury to his wrists when he was arrested, handcuffed, and dragged by police. Mr. Collier alleges that a PD914(e) form was not filled out "even though it was clearly required by the Police Department's own regulations" and that due to the failure to file the form, there was no referral to the Department's Internal Affairs Division for an investigation. *Id*. Mr. Collier reasons that "[t]he failure to investigate incidents involving excessive force by officers was tolerated by policy makers in the Police Department and created a situation where officers knew they could exercise excessive force with minimal risk of adverse consequences."[3] *Id*.

---

thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[3] Mr. Collier also asserts that the District failed to ensure that officers file accurate and complete PD 313 forms when arrestees are injured, permitting officers to cover up incidents of excessive force. Second Am. Compl. ¶ 10 (citing as an example the arrest of Troy Richardson where police filed a PD 313 form describing knee injury from a car accident and not wrist injury from police abuse); *see also* First Am. Compl. [Dkt. 10], Ex. 1 (PD 313 Re Richardson). The PD 313 form, however, is an "Arrestee's Injury/Illness Report." Because Mr. Collier was never arrested, this Report does not pertain to him.

Mr. Collier further alleges that the District of Columbia inadequately trained and supervised Officer McRae. *Id*. ¶ 12. Mr. Collier was struck in the head with a baton, a potentially deadly use of force which is permitted only when an officer is faced with deadly force. First Am. Compl. [Dkt. 10], Ex. 2 (Decl. of Robert Klotz, Use of Force Expert).[4] Mr. Collier asserts that he was not threatening deadly force against Officer McRae or anyone else, and thus the strike to his head was unjustified. Second Am. Compl. ¶ 12. Mr. Collier alleges that the District, via its custom and policy, failed to train and supervise its police officers in the "proper manner to intervene in incidents involving multiple assaults occurring at the same time," *id*. ¶ 30, and due to the lack of training and supervision, Officer McRae "intervened in [the melee] by applying a savage, wholly unjustified and disproportionate use of force by striking plaintiff Collier in the head with a baton," *id*. ¶ 31. Mr. Smart does not make any allegations against Officer McRae or the District of Columbia.

Mr. Williams filed a motion to dismiss Counts VI and VII, and Plaintiffs oppose. *See* Williams Mot. to Dismiss [Dkt. 11]; Pls. Opp'n [Dkt. 13]; Williams Reply [Dkt. 16]. The District of Columbia filed a motion to dismiss Counts I and V, and Mr. Collier, the only Plaintiff with claims against the District, opposes. *See* District Mot. for Partial Dismissal [Dkt. 15]; Collier Opp'n [Dkt. 17]; District Reply [Dkt. 18].[5]

---

[4] The Second Amended Complaint incorporates by reference Exhibits that were filed in connection with First Amended Complaint.

[5] After the motions to dismiss were full briefed, Plaintiffs filed the Second Amended Complaint in order to correct the first name of Officer Marques McRae, who had been named incorrectly as "Anthony McRae" in the First Amended Complaint. Because the Second Amended Complaint merely corrects this scrivener's error and does not contain any substantive changes, the motions to dismiss are deemed to apply to the Second Amended Complaint.

4

## II. LEGAL STANDARD AND JURISDICTION

### A. Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has stated properly a claim. In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (internal quotation marks and citation omitted).

A complaint must "give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, it must include "more than labels and conclusions" and the facts alleged "must be enough to raise a right to relief above the speculative level." *Id*. "[A] complaint needs *some* information about the circumstances giving rise to the claims." *Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (emphasis in original). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must treat the complaint's factual allegations as true, "even if doubtful in fact," *Twombly*, 550 U.S. at 555, but a court need not accept as true legal conclusions set forth in a complaint, *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### B. Jurisdiction

The Court has federal question jurisdiction under 28 U.S.C. § 1331 because Counts IV and V allege violations of the Fourth and Fifth Amendments of the U.S. Constitution, pursuant to 42 U.S.C. § 1983. All other Counts assert violations of D.C. law. In its discretion, a federal court may exercise supplemental jurisdiction over local law claims joined with federal claims. *See* 28 U.S.C. § 1367(c).

### III. ANALYSIS

#### A. Owen Collier's Assault and Battery Claim Against LaQuan Williams

Mr. Williams moves to dismiss Count VI, alleging that he did not assault or batter Mr. Collier because he had no physical contact with Mr. Collier. Under District of Columbia law, an assault is "an intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the victim." *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993). To prove an assault, a plaintiff must show that he suffered apprehension of harmful or offensive contact and that a reasonable person in his position would have experienced such apprehension. *Rogers v. Loews L'Enfant Plaza Hotel*, 526 F. Supp. 523, 529 (D.D.C. 1981) (discussing D.C. law); *see also Madden v. D.C. Transit System, Inc.*, 307 A.2d 756, 767 (D.C. 1973) ("An essential element of the ancient tort of assault is the intentional putting another in apprehension of an immediate and harmful or offensive conduct."). To prove a battery, a plaintiff must show that he suffered harmful or offensive bodily contact from defendant's intentional act. *Rogers*, 526 F. Supp. at 529 (quoting *Jackson v. District of Columbia*, 412 A.2d 948, 955 (D.C. 1979)).

Mr. Collier does not allege assault because he does not assert that Mr. Williams intentionally threatened him or attempted to cause him harm. Mr. Collier does not allege battery because he does not claim that Mr. Williams had bodily contact with him. Instead, Mr. Collier relies on a creative, but ultimately unsuccessful, theory of proximate causation. He contends that

he was assaulted and battered by Officer McRae and that this was a foreseeable consequence of Mr. Williams' intentional battery of Mr. Smart. The Second Amended Complaint alleges:

> 34. Defendant LaQuan Williams punched Mr. Anthony Smart. He did so intentionally, with malice and without provocation.
>
> 35. Foreseeable consequences of this act were: that a general melee would break out between members of Williams' entourage and security personnel on the scene; and that the police would intervene and that persons including plaintiff Collier would be injured.

Second Am. Compl. ¶¶ 34-35. In short, Mr. Collier seeks to hold Mr. Williams liable for injuries inflicted by Officer McRae via the allegation that Mr. Williams proximately caused Mr. Collier's injury.

The concept of proximate cause arises from the law of negligence. The elements of a negligence claim are (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by defendant; and (3) an injury to the plaintiff proximately caused by the defendant's breach of the duty of care. *Turner v. District of Columbia*, 532 A.2d 662, 666 (D.C. 1987). "To establish proximate cause, the plaintiff must present evidence from which a reasonable juror could find that there was a direct and substantial causal relationship between the defendant's breach of the standard of care and the plaintiff's injuries and that the injuries were foreseeable." *Convit v. Wilson*, 980 A.2d 1104, 1125 (D.C. 2009). Mr. Collier has not alleged that Mr. Williams was negligent because while he has alleged injury and causation, he has not alleged that Mr. Williams owed him a duty of care.

Even if Mr. Collier were to allege negligence, such an allegation of causation could not stand in the face of the other facts alleged—that Mr. Collier was harmed due to the intentional act of a third person, Officer McRae. A chain of causation can be broken by the

7

action of a subsequent tortfeasor or criminal, who is a "superseding cause" of harm, *i.e.* a cause that relieves the first tortfeasor of liability to the injured party. *See Convit*, 980 A.2d at 1126.

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

*Hicks v. United States*, 511 F.2d 407, 420 (D.C. Cir. 1975) (citing Restatement of Torts § 448 (1965)). With regard to third party criminal acts in particular, unless there is some special relationship between the parties, an individual is not liable for harm resulting from the criminal act of a third party. *See Hall v. Ford Enters., Ltd.*, 445 A.2d 610, 611 (D.C. 1982). "Special relationships" that may preclude a finding of superseding cause include the relationship between landlord and tenant, school district and student, employer and employee, hospital and patient, and business and invitee. *Kline v. 1500 Mass. Ave. Apartment Corp.*, 439 F.2d 477, 482-83 (1970); *see, e.g.*, *District of Columbia v. Doe*, 524 A.2d 30 (D.C. 1987) (school district liable when elementary school student was abducted and raped by an intruder); *Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902 (D.C. Cir. 2006) (nightclub liable when patrons were mugged in alleyway just outside club's only exit). When a plaintiff alleges injury caused by the intervening criminal act of a third party, D.C. law requires the plaintiff to make a "more heightened showing of foreseeability" than would be required if the plaintiff alleged merely negligence. *Potts v. District of Columbia*, 697 A.2d 1249, 1252 (D.C. 1997). "In such a case, the plaintiff bears the burden of establishing that the criminal act was so foreseeable that a duty arises to guard against it. Because of the extraordinary nature of criminal conduct, the law requires that the foreseeability of the risk be more precisely shown." *Id*.

For example, the District of Columbia Court of Appeals has rejected the claim that gun manufacturers and distributors can be held liable for injuries caused by criminal misuse of the guns they make and distribute. *District of Columbia v. Beretta*, 872 A.2d 633, 639-45 (D.C. 2005) (en banc) (following *Delahanty v. Hinckley*, 564 A.2d 758, 62 (D.C. 1989)). Refusing to recognize a negligence claim against firearm manufacturers and distributors for harm caused by persons unlawfully using firearms, the D.C. Court of Appeals affirmed the trial court's entry of judgment on the pleadings on the claim. *Id.* at 641-42. The court found that the plaintiffs' "generic" proffer of foreseeability—that gun manufacturers and distributors owed a duty to prevent foreseeable harm to D.C. residents—was insufficient to create a duty of care and did not meet the heightened requirement of foreseeability. *Id.* at 643.

To reiterate: (1) Mr. Collier has not alleged assault because he does not assert that Mr. Williams intentionally threatened him or attempted to cause him harm; (2) he has not alleged battery because he does not assert that Mr. Williams had bodily contact with him; (3) he has not alleged negligence because he has not asserted that Mr. Williams owed him a duty of care; and (4) he has not alleged that his relationship with Mr. Williams was a "special relationship," giving rise to a duty of care that could make Mr. Williams liable for the intentional acts of third parties, like Officer McRae. The fact that Mr. Collier couches his assault and battery claim against Mr. Williams in the language of negligence and proximate cause—*i.e.*, by making a generic claim of foreseeability—does not save the claim. Accordingly, Mr. Collier has not stated a claim for assault, battery, or negligence against Mr. Williams. Mr. Williams' motion to dismiss Count VI will be granted in part, and Count VI will be dismissed.[6]

---

[6] Mr. Collier erroneously argues that "transferred intent" applies here, *i.e.*, that Mr. Williams' intent to injure Mr. Smart can be transferred to the injury suffered by Mr. Collier. "Transferred intent" is the principle that one who intends to injure one person and instead injures a bystander

9

### B. Anthony Smart's Assault and Battery Claim Against LaQuan Williams

Mr. Smart's only claim in this case is Count VII, which alleges that Mr. Williams assaulted and battered him. Mr. Williams moves to dismiss Count VII, objecting in various ways to its bare bones nature. Count VII, in its entirety, alleges:

> 37. Plaintiff Smart, hereby incorporates paragraphs 1 through 36, supra, by reference.
>
> 38. Defendant LaQuan Williams assaulted and punched plaintiff Anthony Smart. He did so intentionally, with malice and without provocation.
>
> 39. As a direct and proximate result thereof, plaintiff Smart suffered serious bodily injuries, including multiple bruises and contusions over many parts of his body.
>
> WHEREFORE, plaintiff Smart prays for a judgment against Williams, awarding compensatory damages in the amount of Fifty Thousand [Dollars] ($50,000) plus interest and allowable costs.

Second Am. Compl. ¶¶ 37-39. Mr. Williams ignores the fact that paragraph 37 incorporates all prior allegations. When read as a whole, Mr. Smart's claim against Mr. Williams is adequately alleged.

Mr. Williams argues that Mr. Smart fails to allege an assault because it does not expressly state that Mr. Smart suffered "apprehension" of physical contact and citing in support a case where a battery victim did not see the defendant coming. *See* Williams Reply at 4 (citing *Chaka v. Davis*, Case No. 2011 CA 190 B (D.C. Sup. Ct., Sept. 17, 2013)). The allegations here are: that Mr. Smart escorted Mr. Williams and others out of the nightclub; that Mr. Williams

---

is liable for an intentional tort against the injured person. *See, e.g.*, *Baska v. Scherzer*, 156 P.3d 617, 623, 628 (Kan. 2007) (a plaintiff was injured when she stepped in the middle of a fist fight; while she was hit "unintentionally," transferred intent applied and her claim was for assault and battery); *see also Ruffin v. United States*, 642 A.2 1288, 1293 (D.C. 1994) (transferred intent applies in context of criminal law). The concept would apply here if Mr. Collier had alleged that Mr. Williams intended to strike Mr. Smart but instead hit Mr. Collier. Those are *not* the allegations set forth in the Second Amended Complaint.

punched Mr. Smart in the jaw; that Mr. Smart had not threatened or attempted to strike Mr. Williams at the time he was initially struck; and that Mr. Williams struck Mr. Smart multiple times. Second Am. Compl. ¶ 9. For the purpose of stating a claim for assault, the allegations are sufficient; it is unlikely that Mr. Smart would receive multiple blows without "apprehending" that physical contact was going to occur. Discovery and/or trial will flesh out whether Mr. Smart actually suffered an assault because he "apprehended" the imminent harmful or offensive physical contact. *See Rogers*, 526 F. Supp. at 529 (an assault occurs when a person suffers reasonable apprehension of harmful or offensive contact).

Mr. Williams mistakenly claims that the allegations do not sufficiently allege that he intentionally struck Mr. Smart. Mr. Smart alleges that Mr. Williams struck him in the jaw, that he had not threatened or attempted to strike Mr. Williams at the time he was initially struck, and that Mr. Williams struck him multiple times. Second Am. Compl. ¶ 9. It also alleges that Mr. Williams punched Mr. Smart "intentionally, with malice." *Id*. ¶ 38. Such allegations are sufficient to state a claim for battery. *See Rogers*, 526 F. Supp. at 529 (to prove battery, a plaintiff must show that he suffered harmful or offensive bodily contact from defendant's intentional act).

Mr. Williams complains that the allegations do not address the issue of justification because they do not indicate whether "Mr. Smart had threatened or attempted to strike a third party." *See* Williams Mot. to Dismiss at 6. Mr. Williams implies that he might have been justified in striking Mr. Smart to protect a third party. Because Mr. Smart alleges that he suffered harmful or offensive bodily contact when Mr. Williams intentionally punched him "without provocation," he has stated a claim for battery. *See* Second Am. Compl. ¶¶ 9, 38.

11

Finally, Mr. Williams complains that the request for compensatory damages in the amount of $50,000 is insufficient because Mr. Smart does not specifically allege medical expenses, lost earnings, or pain and suffering. He wrongly asserts that Mr. Smart seeks only an equitable remedy. Williams Mot. to Dismiss at 7. Mr. Williams ignores the fact that Mr. Smart alleges that he "suffered serious bodily injuries, including multiple bruises and contusions over many parts of his body." Second Am. Compl. ¶ 39. It is clear that Mr. Smart has alleged a claim against Mr. Williams for assault and battery. Whether Mr. Smart can prove this claim and whether he can prove damages are matters for a later day. Mr. Williams' motion to dismiss Count VII will be denied.

### C. Improper Joinder of Claims

Mr. Smart's claim against Mr. Williams is improperly joined with Mr. Collier's claims against Officer McRae and the District of Columbia. Federal Rule of Civil Procedure 20 permits joinder of plaintiffs if:

> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all plaintiffs will arise in the action.

The original joinder of Mr. Collier and Mr. Smart as Plaintiffs here made some sense as they both alleged battery claims against Mr. Williams arising from the same occurrence. Having dismissed Mr. Collier's claim against Mr. Williams for failure to state a claim, however, it is now clear that the remaining claims are misjoined. While Messrs. Collier and Smart assert a right to relief that arises from the same occurrence—the brawl outside the Stadium Nightclub— there is no question of law or fact common to them both. Mr. Collier alleges injury by Officer

McRae. Mr. Smart alleges injury by Mr. Williams. These are separate claims against separate defendants that should not be joined.[7]

Under Rule 21, a court may, at any time, *sua sponte* drop misjoined parties and sever misjoined claims. *See* Fed. R. Civ. P. 21. Count VII of the Second Amended Complaint, Mr. Smart's assault and battery claim against Mr. Williams, will be severed.

With regard to the severed claim—Mr. Smart's assault and battery claim against Mr. Williams—the Court lacks independent jurisdiction. Because the assault and battery claim arises from D.C. law, federal question jurisdiction does not exist. *See* 28 U.S.C. § 1331. Nor does diversity jurisdiction apply. *See id*. § 1332(a) (diversity jurisdiction applies to suits between citizens of different states where the amount in controversy exceeds the sum of $75,000). Diversity jurisdiction exists when the citizenship of each plaintiff is "diverse" from the citizenship of each defendant, *see Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996), but Mr. Smart and Mr. Williams are both residents of Maryland, *see* Second Am. Compl. ¶¶ 5, 7. In sum, the Court cannot exercise jurisdiction over Mr. Smart's claim against Mr. Williams. As a consequence, the Court will remand Mr. Smart's claim to D.C. Superior Court. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 7-8 (1983) ("If it appears before final judgment that a case was not properly removed because it was not within the original jurisdiction of the United States district courts, the district court must remand it to the state court from which it was removed.").

---

[7] This is not a case where joinder is mandated under Federal Rule of Civil Procedure 19. *See* Fed. R. Civ. P. 19; *Park v. Didden*, 695 F.2d 626, 628-29 (D.C. Cir. 1982) (Rule 19 requires the joinder, if feasible, of all persons needed for just adjudication).

To summarize, the Court will sever Count VII from the Second Amended Complaint (Mr. Smart's assault and battery claim against Mr. Williams) and remand it to D.C. Superior Court. As a result, Mr. Smart and Mr. Williams will be dropped as parties to this case.

**D. Owen Collier's Negligence Claim Against the District of Columbia**

The District of Columbia moves to dismiss Count I, Mr. Collier's negligence claim against the District, because (1) Mr. Collier failed to give proper notice of the claim under D.C. Code § 12-309, *see* District Mot. for Partial Dismissal at 3-8; and (2) the Second Amended Complaint can be read to allege intentional misconduct and not negligence, *see* District Reply at 1-3.

Section 12-309 provides:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

D.C. Code § 12-309.

Mr. Collier provided notice via a letter from his attorney to the Mayor. *See* Collier Opp'n, Ex. 1 (July 18, 2013 Letter to Mayor). The letter alleged that "Mr. Collier was struck with a baton in the right eye" and that "police officers acting within the scope of their employment were negligent and/or committed assaults and civil rights violations in at least the following ways:"

> 1. By using unnecessary, unreasonable and excessive force.
> 2. By striking Mr. Collier in the head with a baton when deadly force was not being threatened.
> 3. By failing to deploy other less dangerous means, such as pepper spray to break up the fight.
> 4. By failing to follow the training of the Metropolitan Police Department which requires the minimum use of force in such situations.

14

> 5. By striking security personnel, including Mr. Collier, who had not initiated the conflict and were defending themselves from attack.
> 6. By assaulting Mr. Collier.
> 7. By violating his rights under the Fourth Amendment of the United States Constitution by employing unnecessary and excessive force.
> 8. By negligently training the said police officers.
> 9. By negligently selecting [the person who commanded] the officers assigned to monitoring the Stadium Nightclub.

*Id.* at 2. Mr. Collier also stated a claim for negligence against the District by asserting that officers, acting within the scope of their employment with the District, "failed to exercise the level of care required by the circumstances" causing Mr. Collier to suffer a blow to the head with a baton. Second Am. Compl. ¶¶ 15-16; *see Scales v. District of Columbia*, 973 A.2d 722, 730 (D.C. 2009) (to prevail on a negligence claim, a plaintiff must prove the applicable standard of care, that the defendant deviated from that standard, and that such deviation caused plaintiff's injury).

The District insists that Mr. Collier cannot allege negligence based on underlying allegations that Officer McRae *intentionally* struck him with a baton. The District argues that Mr. Collier provided notice of, and stated a claim for, intentional misconduct and not negligence. The District relies on *Sabir v. District. of Columbia*, 755 A.2d 449, 452 (D.C. 2000), for the proposition that negligence and battery are "separate theories of liability which must be presented individually and founded on appropriate evidence. [A] plaintiff cannot seek to recover by 'dressing up the substance' of one claim . . . in the garments of another." In other words, a person cannot negligently commit an intentional tort. *Id*. When a plaintiff alleges both negligence and intentional tort claims in connection with a police officer's intentional use of force, D.C. law requires that the negligence claim "must be distinctly pled and based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive

15

force itself and violative of a distinct standard of care." *Smith v. District of Columbia*, 882 A.2d 778, 792 (D.C. 2005) (citing *District of Columbia v. Chinn*, 839 A.2d 701, 710 (D.C. 2003)); *see Scales*, 973 A.2d at 731 (negligence claim that is not supported by evidence independent of excessive force should not be submitted to the jury); *Rice v. District of Columbia*, 818 F. Supp. 2d 47 (D.D.C. 2011) (judgment as a matter of law granted to defendant on negligence claim because no independent evidence of negligence was presented at trial).

However, the case is still at the pleading stage, and both the § 12-309 notice and the Second Amended Complaint adequately assert negligence, thereby surviving the District's motion to dismiss. To succeed on his claim ultimately, Mr. Collier will be required to submit independent evidence of negligence. The motion to dismiss Count I will be denied.

### E. Owen Collier's Fifth Amendment Claim Against the District

The District of Columbia moves to dismiss Mr. Collier's Fifth Amendment claim[8] because the claim is specifically covered by the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The point is well-founded.

In addressing an excessive force claim, a court must first identify the specific constitutional right allegedly infringed by the challenged application of force. *Id*. at 394. "The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard." *Id*. In

---

[8] The Fifth Amendment provides that no person "shall be deprived of life, liberty, or property, without due process of law," *see* U.S. Const. amend. V, and the Fourteenth Amendment similarly provides that "no State shall . . . deprive any person of life, liberty, or property, without due process of law," *see* U.S. Const. amend. XIV. Because the District of Columbia is a federal enclave, it is subject to the Fifth Amendment and not the Fourteenth, which applies to the States. *Propert v. District of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991) (citing *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)). The ultimate legal analysis is the same, however, and cases analyzing States' liability for a Fourteenth Amendment due process violation can be relied upon to analyze the District's liability for a Fifth Amendment due process violation. *See Piechowicz v. United States*, 885 F.2d 1207, 1214 n.9 (4th Cir. 1989).

16

*Graham*, a plaintiff claimed that an officer used excessive force during an investigatory stop in violation of his right to substantive due process under the Fourteenth Amendment. Because the case related to an alleged unreasonable seizure, which is specifically addressed by the Fourth Amendment, the Supreme Court analyzed his claim under the Fourth Amendment and not under the Fourteenth Amendment as alleged. *Id*. at 395. Thus, "*Graham* . . . requires that if a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

Mr. Collier alleges a Fifth Amendment claim against Officer McRae as part of Count IV and a Fifth Amendment claim against the District as part of Count V. Both Counts allege that Mr. Collier's right to be free from excessive force was violated. Because excessive force claims are specifically addressed by the Fourth Amendment, they must be judged by reference to the Fourth Amendment and not the Fifth. *See Graham*, 490 U.S. at 395. Mr. Collier's Fifth Amendment claims are surplusage and will be dismissed.

**F. Owen Collier's Fourth Amendment Claim Against the District**

The District contends that the Fourth Amendment claim should be dismissed because Mr. Collier has not alleged that a D.C. custom or policy caused the constitutional violation. To state a § 1983 claim against a municipality such as the District of Columbia, a plaintiff must allege that a custom or policy caused the constitutional violation. *Feirson v. District of Columbia*, 506 F.3d 1063, 1066 (D.C. Cir. 2007) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged.") A plaintiff must allege more than a single instance of

17

constitutional misconduct because "[p]leading a single instance of a constitutional violation—that does not itself establish municipal policy—without connecting it to an existing, unconstitutional policy is not sufficient to state a claim under § 1983." *Trimble v. District of Columbia*, 779 F. Supp. 2d 54, 58 (D.D.C. 2011) (citing *Tuttle*, 471 U.S. at 823-24). Further, to state a claim for failure to train or supervise, a plaintiff must allege facts showing that "the need for more or different training or supervision was so obvious and the inadequacy so likely to result in a violation of constitutional rights that the policymakers can be said to have been deliberately indifferent to the need." *Rogala v. District of Columbia*, 161 F.3d 44, 56 (D.C. Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989)).

While the Fourth Amendment allegations against the District are thin, they are sufficient to survive the District's motion to dismiss. Mr. Collier alleges that the District, as a matter of custom or policy, failed to enforce rules that require police officers to file PD 914(e) use-of-force incident reports when they use force in the line of duty. Mr. Collier contends that the failure to file such reports resulted in a failure to investigate excessive force and created an atmosphere where officers used excessive force with impunity. Second Am. Compl. ¶ 11. No officer completed a PD 914(e) form with regard to Officer McRae's use of force against Mr. Collier. Mr. Collier contends that this was not a single incident because officers regularly fail to file such reports, as exemplified by the case of Troy Richardson, an individual who police handcuffed and dragged, resulting in wrist injury. Mr. Collier also claims that the District, via informal custom and policy, failed to train and supervise its police officers in the proper use of force to the head, *see id*. ¶ 12, and in the "proper manner to intervene in incidents involving multiple assaults occurring at the same time," *id*. ¶ 30. Officer McRae allegedly struck Mr. Collier in the head with a baton—a potentially deadly use of force which is permitted only when

18

an officer is faced with deadly force, *see* Decl. of Robert Klotz—when Mr. Collier was not threatening deadly force against anyone, *see* Second Am. Compl. ¶ 12. As a result of these alleged D.C. customs/policies, Officer McRae allegedly violated Mr. Collier's Fourth Amendment right to be free from excessive force. *Id*. ¶ 31. The District's motion to dismiss the Fourth Amendment claim will be denied.[9]

## IV. CONCLUSION

For the reasons set forth above, the motion to dismiss filed by LaQuan Williams [Dkt. 11] will be granted in part and denied in part. Count VI of the Second Amended Complaint will be dismissed. Count VII, Mr. Smart's assault and battery claim against Mr. Williams, will be severed and remanded to the District of Columbia Superior Court. Mr. Smart and Mr. Williams will be dropped as parties to this case. The motion to dismiss filed by the District of Columbia [Dkt. 15] will be granted in part and denied in part. Plaintiff's Fifth Amendment claims, set forth as part of Counts IV and V, will be dismissed.

The remaining parties are: Plaintiff Owen Collier and Defendants the District of Columbia and Officer Marques McRae. The following Counts of the Second Amended Complaint remain pending:

> Count I—Negligence (against the District of Columbia);
>
> Count II—Assault and Battery (against the District of Columbia);
>
> Count III—Assault and Battery (against Officer McRae);
>
> Count IV—Violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 (against Officer McRae); and

---

[9] The Court expresses no opinion with regard to whether the facts, yet to be discovered, will actually support Mr. Collier's claim that a D.C. custom or policy was a moving force behind the alleged constitutional violation.

Count V— Violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 (against the District of Columbia).

The District of Columbia will be ordered to file an Answer to the Complaint. *See* Fed. R. Civ. P. 12(a)(4). A memorializing Order accompanies this Opinion.

Date: May 30, 2014                                         /s/
                                                ROSEMARY M. COLLYER
                                                United States District Judge